Decree

# SUPREME COURT OF THE UNITED STATES

## STATE OF ARIZONA *v.* STATE OF CALIFORNIA

### ON BILL OF COMPLAINT

No. 8, Orig.   Decree entered March 27, 2006

The final settlement agreements are approved, the joint motion for entry of decree is granted, and the proposed consolidated decree is entered.  Frank J. McGarr, Esq., of Downers Grove, Illinois, the Special Master in this case, is hereby discharged with the thanks of the Court.

## CONSOLIDATED DECREE

On January 19, 1953, the Court granted the State of Arizona leave to file a bill of complaint against the State of California and seven of its public agencies, Palo Verde Irrigation District, Imperial Irrigation District, Coachella Valley County Water District, Metropolitan Water District of Southern California, City of Los Angeles, City of San Diego and County of San Diego.  344 U. S. 919.  The United States and the State of Nevada intervened.  344 U. S.  919 (1953) (intervention by the United States); 347 U. S. 985 (1954) (intervention by Nevada).  The State of New Mexico and the State of Utah were joined as parties. 350 U. S. 114, 115 (1955).  The Court referred the case to George I. Haight, Esquire, and upon his death to Simon H. Rifkind, Esquire, as Special Master.  347 U. S. 986 (1954); 350 U. S. 812 (1955).  On January 16, 1961, the Court received and ordered filed the report of Special Master Rifkind.  364 U. S. 940.  On June 3, 1963, the Court filed an opinion in the case, 373 U. S. 546, and on March 9, 1964, the Court entered a decree in the case.  376 U. S. 340.

On February 28, 1966, the Court granted the joint motion of the parties to amend Article VI of the decree, and

so amended Article VI to extend the time for submission of lists of present perfected rights. 383 U. S. 268.

On January 9, 1979, the Court filed an opinion granting the joint motion for entry of a supplemental decree, entered a supplemental decree, denied in part the motion to intervene of the Fort Mojave Indian Tribe, and otherwise referred the case and the motions to intervene of the Fort Mojave Indian Tribe and the Colorado River Indian Tribes, et al., to Judge Elbert Tuttle as Special Master. 439 U. S. 419, 437. On April 5, 1982, the Court received and ordered filed the report of Special Master Tuttle. 456 U. S. 912. On March 30, 1983, the Court filed an opinion rendering a decision on the several exceptions to the report of the Special Master, approving the recommendation that the Fort Mojave Indian Tribe, the Chemehuevi Indian Tribe, the Colorado River Indian Tribes, the Quechan Tribe, and the Cocopah Indian Tribe be permitted to intervene, and approving some of his further recommendations and disapproving others, 460 U. S. 605, 609, 615. On April 16, 1984, the Court entered a second supplemental decree implementing that decision. 466 U. S. 144.

On October 10, 1989, the Court granted the motion of the state parties to reopen the decree to determine the disputed boundary claims with respect to the Fort Mojave, Colorado River, and Fort Yuma Indian reservations. 493 U. S. 886. The case was referred to Robert B. McKay, Esquire, and upon his death to Frank McGarr, Esquire, as Special Master. 493 U. S. 971 (1989); 498 U. S. 964 (1990). On October 4, 1999, the Court received and ordered filed the report of Special Master McGarr. 528 U. S. 803. On June 19, 2000, the Court filed an opinion rendering a decision on the several exceptions to the report of the Special Master, approving the settlements of the parties with respect to the Fort Mojave and Colorado River Indian Reservations and remanding the case to the Special Master with respect to the Fort Yuma Indian Reservation. 530

Decree

U. S. 392, 418, 419–420.  On October 10, 2000, the Court entered a supplemental decree.  531 U. S. 1.

On June 14, 2005, Special Master McGarr submitted his report recommending approval of the settlements of the federal reserved water rights claim with respect to the Fort Yuma Indian Reservation and a proposed supplemental decree to implement those settlements.

The State of Arizona, the State of California, The Metropolitan Water District of Southern California, Coachella Valley Water District, the United States, and the Quechan Tribe, at the direction of the Court, have filed a joint motion to enter a consolidated decree.

This decree consolidates the substantive provisions of the decrees previously entered in this action at 376 U. S. 340 (1964), 383 U. S. 268 (1966), 439 U. S. 419 (1979), 466 U. S. 144 (1984), and 531 U. S. 1 (2000), implements the settlements of the federal reserved water rights claim for the Fort Yuma Indian Reservation, which the Court has approved this date, and reflects changes in the names of certain parties and Indian Reservations.  This decree is entered in order to provide a single convenient reference to ascertain the rights and obligations of the parties adjudicated in this original proceeding, and reflects only the incremental changes in the original 1964 decree by subsequent decrees and the settlements of the federal reserved water rights claim for the Fort Yuma Indian Reservation.

Accordingly,

IT IS ORDERED, ADJUDGED, AND DECREED

Except where the text of this decree differs from the previous decrees, this decree does not vacate the previous decrees nor alter any of their substantive provisions, and all mandates, injunctions, obligations, privileges, and requirements of this decree are deemed to remain effective as of the date of their respective entry in the prior decrees. Entry of this decree shall not affect the validity or effect

of, nor affect any right or obligation under, any existing statute, regulation, policy, administrative order, contract, or judicial decision or judgment in other actions that references any of the previous decrees, and any such reference shall be construed as a reference to the congruent provisions of this decree.

I. For purposes of this decree:

(A) "Consumptive use" means diversions from the stream less such return flow thereto as is available for consumptive use in the United States or in satisfaction of the Mexican Treaty obligation;

(B) "Mainstream" means the mainstream of the Colorado River downstream from Lee Ferry within the United States, including the reservoirs thereon;

(C) Consumptive use from the mainstream within a State shall include all consumptive uses of water of the mainstream, including water drawn from the mainstream by underground pumping, and including, but not limited to, consumptive uses made by persons, by agencies of that State, and by the United States for the benefit of Indian reservations and other federal establishments within the State;

(D) "Regulatory structures controlled by the United States" refers to Hoover Dam, Davis Dam, Parker Dam, Headgate Rock Dam, Palo Verde Dam, Imperial Dam, Laguna Dam and all other dams and works on the mainstream now or hereafter controlled or operated by the United States which regulate the flow of water in the mainstream or the diversion of water from the mainstream;

(E) "Water controlled by the United States" refers to the water in Lake Mead, Lake Mohave, Lake Havasu and all other water in the mainstream below Lee Ferry and within the United States;

(F) "Tributaries" means all stream systems the waters

of which naturally drain into the mainstream of the Colorado River below Lee Ferry;

(G) "Perfected right" means a water right acquired in accordance with state law, which right has been exercised by the actual diversion of a specific quantity of water that has been applied to a defined area of land or to definite municipal or industrial works, and in addition shall include water rights created by the reservation of mainstream water for the use of federal establishments under federal law whether or not the water has been applied to beneficial use;

(H) "Present perfected rights" means perfected rights, as here defined, existing as of June 25, 1929, the effective date of the Boulder Canyon Project Act;

(I) "Domestic use" shall include the use of water for household, stock, municipal, mining, milling, industrial, and other like purposes, but shall exclude the generation of electrical power;

(J) "Annual" and "Year," except where the context may otherwise require, refer to calendar years;

(K) Consumptive use of water diverted in one State for consumptive use in another State shall be treated as if diverted in the State for whose benefit it is consumed.

II. The United States, its officers, attorneys, agents and employees be and they are hereby severally enjoined:

(A) From operating regulatory structures controlled by the United States and from releasing water controlled by the United States other than in accordance with the following order of priority:

> (1) For river regulation, improvement of navigation, and flood control;
> (2) For irrigation and domestic uses, including the satisfaction of present perfected rights; and
> (3) For power;
> Provided, however, that the United States may release water in satisfaction of its obligations to the

Decree

United States of Mexico under the Treaty dated February 3, 1944, without regard to the priorities specified in this subdivision (A);

(B) From releasing water controlled by the United States for irrigation and domestic use in the States of Arizona, California and Nevada, except as follows:

(1) If sufficient mainstream water is available for release, as determined by the Secretary of the Interior, to satisfy 7,500,000 acre-feet of annual consumptive use in the aforesaid three States, then of such 7,500,000 acre-feet of consumptive use, there shall be apportioned 2,800,000 acre-feet for use in Arizona, 4,400,000 acre-feet for use in California, and 300,000 acre-feet for use in Nevada;

(2) If sufficient mainstream water is available for release, as determined by the Secretary of the Interior, to satisfy annual consumptive use in the aforesaid States in excess of 7,500,000 acre-feet, such excess consumptive use is surplus, and 50% thereof shall be apportioned for use in Arizona and 50% for use in California; provided, however, that if the United States so contracts with Nevada, then 46% of such surplus shall be apportioned for use in Arizona and 4% for use in Nevada;

(3) If insufficient mainstream water is available for release, as determined by the Secretary of the Interior, to satisfy annual consumptive use of 7,500,000 acre-feet in the aforesaid three States, then the Secretary of the Interior, after providing for satisfaction of present perfected rights in the order of their priority dates without regard to state lines and after consultation with the parties to major delivery contracts and such representatives as the respective States may designate, may apportion the amount remaining available for consumptive use in such manner as is

consistent with the Boulder Canyon Project Act as interpreted by the opinion of this Court herein, and with other applicable federal statutes, but in no event shall more than 4,400,000 acre-feet be apportioned for use in California including all present perfected rights;

(4) Any mainstream water consumptively used within a State shall be charged to its apportionment, regardless of the purpose for which it was released;

(5) Notwithstanding the provisions of Paragraphs (1) through (4) of this subdivision (B), mainstream water shall be released or delivered to water users (including but not limited to public and municipal corporations and other public agencies) in Arizona, California, and Nevada only pursuant to valid contracts therefor made with such users by the Secretary of the Interior, pursuant to Section 5 of the Boulder Canyon Project Act or any other applicable federal statute;

(6) If, in any one year, water apportioned for consumptive use in a State will not be consumed in that State, whether for the reason that delivery contracts for the full amount of the State's apportionment are not in effect or that users cannot apply all of such water to beneficial uses, or for any other reason, nothing in this decree shall be construed as prohibiting the Secretary of the Interior from releasing such apportioned but unused water during such year for consumptive use in the other States. No rights to the recurrent use of such water shall accrue by reason of the use thereof;

(C) From applying the provisions of Article 7(d) of the Arizona water delivery contract dated February 9, 1944, and the provisions of Article 5(a) of the Nevada water delivery contract dated March 30, 1942, as amended by

the contract dated January 3, 1944, to reduce the apportionment or delivery of mainstream water to users within the States of Arizona and Nevada by reason of any uses in such States from the tributaries flowing therein;

(D) From releasing water controlled by the United States for use in the States of Arizona, California, and Nevada for the benefit of any federal establishment named in this subdivision (D) except in accordance with the allocations made herein; provided, however, that such release may be made notwithstanding the provisions of Paragraph (5) of subdivision (B) of this Article; and provided further that nothing herein shall prohibit the United States from making future additional reservations of mainstream water for use in any of such States as may be authorized by law and subject to present perfected rights and rights under contracts theretofore made with water users in such State under Section 5 of the Boulder Canyon Project Act or any other applicable federal statute:

(1) The Chemehuevi Indian Reservation in annual quantities not to exceed (i) 11,340 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 1,900 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of February 2, 1907;

(2) The Cocopah Indian Reservation in annual quantities not to exceed (i) 9,707 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 1,524 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with priority dates of September 27, 1917, for lands reserved by the Executive Order of said date; June 24, 1974, for lands reserved by the Act of June 24, 1974 (88 Stat. 266, 269);

Decree

(3) The Fort Yuma Indian Reservation in annual quantities not to exceed (i) 77,966 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 11,694 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of January 9, 1884;

(4) The Colorado River Indian Reservation in annual quantities not to exceed (i) 719,248 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 107,903 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with priority dates of March 3, 1865, for lands reserved by the Act of March 3, 1865 (13 Stat. 541, 559); November 22, 1873, for lands reserved by the Executive Order of said date; November 16, 1874, for lands reserved by the Executive Order of said date, except as later modified; May 15, 1876, for lands reserved by the Executive Order of said date; November 22, 1915, for lands reserved by the Executive Order of said date;

(5) The Fort Mojave Indian Reservation in annual quantities not to exceed (i) 132,789 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 20,544 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with priority dates of September 19, 1890, for lands transferred by the Executive Order of said date; February 2, 1911, for lands reserved by the Executive Order of said date.

(6) The Lake Mead National Recreation Area in annual quantities reasonably necessary to fulfill the purposes of the Recreation Area, with priority dates of May 3, 1929, for lands reserved by the Executive Or-

der of said date (No. 5105), and April 25, 1930, for lands reserved by the Executive Order of said date (No. 5339);

(7) The Havasu Lake National Wildlife Refuge in annual quantities reasonably necessary to fulfill the purposes of the Refuge, not to exceed (i) 41,839 acre-feet of water diverted from the mainstream or (ii) 37,339 acre-feet of consumptive use of mainstream water, whichever of (i) or (ii) is less, with a priority date of January 22, 1941, for lands reserved by the Executive Order of said date (No. 8647), and a priority date of February 11, 1949, for land reserved by the Public Land Order of said date (No. 559);

(8) The Imperial National Wildlife Refuge in annual quantities reasonably necessary to fulfill the purposes of the Refuge not to exceed (i) 28,000 acre-feet of water diverted from the mainstream or (ii) 23,000 acre-feet of consumptive use of mainstream water, whichever of (i) or (ii) is less, with a priority date of February 14, 1941;

(9) Boulder City, Nevada, as authorized by the Act of September 2, 1958, 72 Stat. 1726, with a priority date of May 15, 1931;

Provided, further, that consumptive uses from the mainstream for the benefit of the above-named federal establishments shall, except as necessary to satisfy present perfected rights in the order of their priority dates without regard to state lines, be satisfied only out of water available, as provided in subdivision (B) of this Article, to each State wherein such uses occur and subject to, in the case of each reservation, such rights as have been created prior to the establishment of such reservation by contracts executed under Section 5 of the Boulder Canyon Project Act or any other applicable federal statute.

Decree

III. The States of Arizona, California and Nevada, Palo Verde Irrigation District, Imperial Irrigation District, Coachella Valley Water District, The Metropolitan Water District of Southern California, City of Los Angeles, City of San Diego, and County of San Diego, and all other users of water from the mainstream in said States, their officers, attorneys, agents and employees, be and they are hereby severally enjoined:

(A) From interfering with the management and operation, in conformity with Article II of this decree, of regulatory structures controlled by the United States;

(B) From interfering with or purporting to authorize the interference with releases and deliveries, in conformity with Article II of this decree, of water controlled by the United States;

(C) From diverting or purporting to authorize the diversion of water from the mainstream the diversion of which has not been authorized by the United States for use in the respective States; provided, however, that no party named in this Article and no other user of water in said States shall divert or purport to authorize the diversion of water from the mainstream the diversion of which has not been authorized by the United States for its particular use;

(D) From consuming or purporting to authorize the consumptive use of water from the mainstream in excess of the quantities permitted under Article II of this decree.

IV. The State of New Mexico, its officers, attorneys, agents and employees, be and they are after March 9, 1968, hereby severally enjoined:

(A) From diverting or permitting the diversion of water from San Simon Creek, its tributaries and underground water sources for the irrigation of more than a total of 2,900 acres during any one year, and from exceeding a total consumptive use of such water, for whatever purpose,

of 72,000 acre-feet during any period of ten consecutive years; and from exceeding a total consumptive use of such water, for whatever purpose, of 8,220 acre-feet during any one year;

(B) From diverting or permitting the diversion of water from the San Francisco River, its tributaries and underground water sources for the irrigation within each of the following areas of more than the following number of acres during any one year:

Luna Area ...............................................................225
Apache Creek-Aragon Area.......................................316
Reserve Area ...........................................................725
Glenwood Area......................................................1,003

and from exceeding a total consumptive use of such water for whatever purpose, of 31,870 acre-feet during any period of ten consecutive years; and from exceeding a total consumptive use of such water, for whatever purpose, of 4,112 acre-feet during any one year;

(C) From diverting or permitting the diversion of water from the Gila River, its tributaries (exclusive of the San Francisco River and San Simon Creek and their tributaries) and underground water sources for the irrigation within each of the following areas of more than the following number of acres during any one year:

Upper Gila Area.......................................................287
Cliff-Gila and Buckhorn-Duck Creek Area ...........5,314
Red Rock Area.......................................................1,456

and from exceeding a total consumptive use of such water (exclusive of uses in Virden Valley, New Mexico), for whatever purpose, of 136,620 acre-feet during any period of ten consecutive years; and from exceeding a total consumptive use of such water (exclusive of uses in Virden Valley, New Mexico), for whatever purpose, of 15,895 acre-feet during any one year;

Decree

(D)  From diverting or permitting the diversion of water from the Gila River and its underground water sources in the Virden Valley, New Mexico, except for use on lands determined to have the right to the use of such water by the decree entered by the United States District Court for the District of Arizona on June 29, 1935, in *United States* v. *Gila Valley Irrigation District et al.* (Globe Equity No. 59) (herein referred to as the *Gila Decree*), and except pursuant to and in accordance with the terms and provisions of the *Gila Decree*; provided, however, that:

(1)  This decree shall not enjoin the use of underground water on any of the following lands:

| Owner | Subdivision and Legal Description | Sec. | Twp. | Rng. | Acreage |
|---|---|---|---|---|---|
| Marvin Arnett and J.C. O'Dell. | Part Lot 3 .............. | 6 | 19S | 21W | 33.84 |
| | Part Lot 4 .............. | 6 | 19S | 21W | 52.33 |
| | NW1/4 SW1/4 ........... | 5 | 19S | 21W | 38.36 |
| | SW1/4 SW1/4 ............ | 5 | 19S | 21W | 39.80 |
| | Part Lot 1 .............. | 7 | 19S | 21W | 50.68 |
| | NW1/4 NW1/4 .......... | 8 | 19S | 21W | 38.03 |
| Hyrum M. Pace, | SW1/4 NE1/4 ............ | 12 | 19S | 21W | 8.00 |
| Ray Richardson, | SW1/4 NE1/4 ............ | 12 | 19S | 21W | 15.00 |
| Harry Day and N. O. Pace, Est. | SE1/4 NE1/4 ............. | 12 | 19S | 21W | 7.00 |
| C. C. Martin ........... | S. part SE1/4 SW1/4 SE1/4 ............. | 1 | 19S | 21W | 0.93 |
| | W1/2 W1/2 W1/2 NE1/4 NE1/4 ............ | 12 | 19S | 21W | 0.51 |
| | NW1/4 NE1/4 4 .......... | 12 | 19S | 21W | 18.01 |
| A. E. Jacobson ........ | SW part Lot 1 ......... | 6 | 19S | 21W | 11.58 |
| W. LeRoss Jones .... | E. Central part: E1/2 E1/2 E1/2 NW1/4 NW1/4. SW part NE1/4 | 12 | 19S | 21W | 0.70 |
| | NW1/4 ...................... | 12 | 19S | 21W | 8.93 |
| | N. Central part: N1/2 N1/2 NW1/2 SE1/4 NW1/4. | | | | |
| Conrad and James R. Donaldson. | N1/2 N1/2 N1/2 SE1/4 ...................... | 18 | 19S | 20W | 8.00 |
| James D. Freestone ........................ | Part W1/2 NW1/4 ...... | 33 | 18S | 21W | 7.79 |

Decree

| Owner | Subdivision and Legal Description | Sec. | Twp. | Rng. | Acreage |
|---|---|---|---|---|---|
| Virgil W. Jones ....... | N$^1$/$_2$ SE$^1$/$_4$ | 12 | 19S | 21W | 7.40 |
| | NW$^1$/$_4$; SE$^1$/$_4$ | | | | |
| | NE$^1$/$_4$ NW$^1$/$_4$. | | | | |
| Darrell Brooks ........ | SE$^1$/$_4$ SW$^1$/$_4$ ............. | 32 | 18S | 21W | 6.15 |
| Floyd Jones ............. | Part N$^1$/$_2$ SE$^1$/$_4$ | | | | |
| | NE$^1$/$_4$ ........................ | 13 | 19S | 21W | 4.00 |
| | Part NW$^1$/$_4$ | | | | |
| | SW$^1$/$_4$ NW$^1$/$_4$ ............ | 18 | 19S | 20W | 1.70 |
| L. M. Hatch ............ | SW$^1$/$_4$ SW$^1$/$_4$ ............. | 32 | 18S | 21W | 4.40 |
| | Virden Townsite ..... | ....... | ............ | .............. | 3.90 |
| Carl M. Donaldson .. | SW$^1$/$_4$ SE$^1$/$_4$ ............. | 12 | 19S | 21W | 3.40 |
| | Part NW$^1$/$_4$ NW$^1$/$_4$ | | | | |
| Mack Johnson ........ | NE$^1$/$_4$ ........................ | 10 | 19S | 21W | 2.80 |
| | Part NE$^1$/$_4$ NW$^1$/$_4$ | | | | |
| | NE$^1$/$_4$ ........................ | 10 | 19S | 21W | 0.0 |
| | Part N$^1$/$_2$ N$^1$/$_2$ S$^1$/$_2$ | | | | |
| | NW$^1$/$_4$ NE$^1$/$_4$ ............ | 10 | 19S | 21W | 0.10 |
| | SE$^1$/$_4$ SE$^1$/$_4$; SW$^1$/$_4$ | | | | |
| | SE$^1$/$_4$ ........................ | 3 | 19S | 21W | |
| Chris Dotz .............. | NW$^1$/$_4$ NE$^1$/$_4$; | | | | 2.66 |
| | NE$^1$/$_4$ NE$^1$/$_4$ ............. | 10 | 19S | 21W | |
| Roy A. Johnson ...... | NE$^1$/$_4$ SE$^1$/$_4$ SE$^1$/$_4$ ..... | 4 | 19S | 21W | 1.00 |
| Ivan and Antone | NE$^1$/$_4$ SE$^1$/$_4$ | | | | |
| Thygerson ............... | SE$^1$/$_4$ ........................ | 32 | 18S | 21W | 1.00 |
| | SW$^1$/$_4$ SE$^1$/$_4$ | | | | |
| John W. Bonine ...... | SW$^1$/$_4$ ........................ | 34 | 18S | 21W | 1.00 |
| Marion K. Morten- | SW$^1$/$_4$ SW$^1$/$_4$ SE$^1$/$_4$ | | | | |
| son ......................... | ................................... | 33 | 18S | 21W | 1.00 |
| Total ................ | ................................... | ....... | ............ | .............. | 380.81 |

or on lands or for other uses in the Virden Valley to which such use may be transferred or substituted on retirement from irrigation of any of said specifically described lands, up to a maximum total consumptive use of such water of 838.2 acre-feet per annum, unless and until such uses are adjudged by a court of competent jurisdiction to be an infringement or impairment of rights confirmed by the Gila Decree; and

(2) This decree shall not prohibit domestic use of water from the Gila River and its underground water sources on lands with rights confirmed by the Gila Decree, or on farmsteads located adjacent to said lands, or in the Virden Townsite, up to a total con-

sumptive use of 265 acre-feet per annum in addition to the uses confirmed by the Gila Decree, unless and until such use is adjudged by a court of competent jurisdiction to be an infringement or impairment of rights confirmed by the Gila Decree;

(E) Provided, however, that nothing in this Article IV shall be construed to affect rights as between individual water users in the State of New Mexico; nor shall anything in this Article be construed to affect possible superior rights of the United States asserted on behalf of National Forests, Parks, Memorials, Monuments and lands administered by the Bureau of Land Management; and provided further that in addition to the diversions authorized herein the United States has the right to divert water from the mainstream of the Gila and San Francisco Rivers in quantities reasonably necessary to fulfill the purposes of the Gila National Forest with priority dates as of the date of withdrawal for forest purposes of each area of the forest within which the water is used;

(F) Provided, further, that no diversion from a stream authorized in Article IV(A) through (D) may be transferred to any of the other streams, nor may any use for irrigation purposes within any area on one of the streams be transferred for use for irrigation purposes to any other area on that stream.

V. The United States shall prepare and maintain, or provide for the preparation and maintenance of, and shall make available, annually and at such shorter intervals as the Secretary of the Interior shall deem necessary or advisable, for inspection by interested persons at all reasonable times and at a reasonable place or places, complete, detailed and accurate records of:

(A) Releases of water through regulatory structures controlled by the United States;

(B) Diversions of water from the mainstream, return flow of such water to the stream as is available for consumptive use in the United States or in satisfaction of the Mexican Treaty obligation, and consumptive use of such water. These quantities shall be stated separately as to each diverter from the mainstream, each point of diversion, and each of the States of Arizona, California and Nevada;

(C) Releases of mainstream water pursuant to orders therefor but not diverted by the party ordering the same, and the quantity of such water delivered to Mexico in satisfaction of the Mexican Treaty or diverted by others in satisfaction of rights decreed herein. These quantities shall be stated separately as to each diverter from the mainstream, each point of diversion, and each of the States of Arizona, California and Nevada;

(D) Deliveries to Mexico of water in satisfaction of the obligations of Part III of the Treaty of February 3, 1944, and, separately stated, water passing to Mexico in excess of treaty requirements;

(E) Diversions of water from the mainstream of the Gila and San Francisco Rivers and the consumptive use of such water, for the benefit of the Gila National Forest.

VI. By March 9, 1967, the States of Arizona, California, and Nevada shall furnish to this Court and to the Secretary of the Interior a list of the present perfected rights, with their claimed priority dates, in waters of the mainstream within each State, respectively, in terms of consumptive use, except those relating to federal establishments. Any named party to this proceeding may present its claim of present perfected rights or its opposition to the claims of others. The Secretary of the Interior shall supply similar information, by March 9, 1967, with respect to the claims of the United States to present perfected rights within each State. If the parties and the Secretary of the Interior

are unable at that time to agree on the present perfected rights to the use of mainstream water in each State, and their priority dates, any party may apply to the Court for the determination of such rights by the Court. A list of present perfected rights, with priority dates, in waters of the mainstream in the States of Arizona, California, and Nevada is set forth in Appendix A to this decree and is incorporated herein by reference.

VII. The State of New Mexico shall, by March 9, 1968, prepare and maintain, or provide for the preparation and maintenance of, and shall annually thereafter make available for inspection at all reasonable times and at a reasonable place or places, complete, detailed and accurate records of:

(A) The acreages of all lands in New Mexico irrigated each year from the Gila River, the San Francisco River, San Simon Creek, and their tributaries and all of their underground water sources, stated by legal description and component acreages and separately as to each of the areas designated in Article IV of this decree and as to each of the three streams;

(B) Annual diversions and consumptive uses of water in New Mexico, from the Gila River, the San Francisco River, San Simon Creek, and their tributaries and all their underground water sources, stated separately as to each of the three streams.

VIII. This decree shall not affect:

(A) The relative rights *inter sese* of water users within any one of the States, except as otherwise specifically provided herein;

(B) The rights or priorities to water in any of the Lower Basin tributaries of the Colorado River in the States of Arizona, California, Nevada, New Mexico and Utah except the Gila River System;

Decree

   (C) The rights or priorities, except as specific provision is made herein, of any Indian Reservation, National Forest, Park, Recreation Area, Monument or Memorial, or other lands of the United States;

   (D) Any issue of interpretation of the Colorado River Compact.

IX. Any of the parties may apply at the foot of this decree for its amendment or for further relief. The Court retains jurisdiction of this suit for the purpose of any order, direction, or modification of the decree, or any supplementary decree, that may at any time be deemed proper in relation to the subject matter in controversy.

APPENDIX

The present perfected rights to the use of mainstream water in the States of Arizona, California, and Nevada, and their priority dates are determined to be as set forth below, subject to the following:

(1) The following listed present perfected rights relate to the quantity of water which may be used by each claimant and the list is not intended to limit or redefine the type of use otherwise set forth in this decree.

(2) This determination shall in no way affect future adjustments resulting from determinations relating to settlement of Indian reservation boundaries referred to in Art. II(D)(5) of this decree.

(3) Article IX of this decree is not affected by this list of present perfected rights.

(4) Any water right listed herein may be exercised only for beneficial uses.

(5) In the event of a determination of insufficient mainstream water to satisfy present perfected rights pursuant to Art. II(B)(3) of this decree, the Secretary of the Interior shall, before providing for the satisfaction of any of the other present perfected rights except for those listed herein as "MISCELLANEOUS PRESENT PERFECTED RIGHTS" (rights numbered 7–21 and 29–80 below) in the order of their priority dates without regard to State lines, first provide for the satisfaction in full of all rights of the Chemehuevi Indian Reservation, Cocopah Indian Reservation, Fort Yuma Indian Reservation, Colorado River Indian Reservation, and the Fort Mojave Indian Reservation as set forth in Art. II(D)(1)–(5) of this decree, provided that the quantities fixed in paragraphs (1) through (5) of Art. II(D) of this decree shall continue to be subject to appropriate adjustment by agreement or decree of this Court in the event that the boundaries of the respective reservations are finally determined except for the western

boundaries of the Fort Mojave and Colorado River Indian Reservations in California and except for the boundaries of the Fort Yuma Indian Reservation in Arizona and California. Additional present perfected rights so adjudicated by such adjustment shall be in annual quantities not to exceed the quantities of mainstream water necessary to supply the consumptive use required for irrigation of the practicably irrigable acres which are included within any area determined to be within a reservation by such final determination of a boundary and for the satisfaction of related uses. The quantities of diversions are to be computed by determining net practicably irrigable acres within each additional area using the methods set forth by the Special Master in this case in his Report to this Court dated December 5, 1960, and by applying the unit diversion quantities thereto, as listed below:

| Indian Reservation | Unit Diversion Quantity Acre-Feet Per Irrigable Acre |
|---|---|
| Cocopah | 6.37 |
| Colorado River | 6.67 |
| Chemehuevi | 5.97 |
| Ft. Mojave | 6.46 |
| Ft. Yuma | 6.67 |

The foregoing reference to a quantity of water necessary to supply consumptive use required for irrigation, and as that provision is included within paragraphs (1) through (5) of Art. II(D) of this decree, shall constitute the means of determining quantity of adjudicated water rights but shall not constitute a restriction of the usage of them to irrigation or other agricultural application. If all or part of the adjudicated water rights of any of the five Indian Reservations is used other than for irrigation or other agricultural application, the total consumptive use, as that term is defined in Art. I(A) of this decree, for said Reservation shall not exceed the consumptive use that would have

resulted if the diversions listed in subparagraph (i) of paragraphs (1) through (5) of Art. II(D) of this decree had been used for irrigation of the number of acres specified for that Reservation in said paragraphs and for the satisfaction of related uses.  Effect shall be given to this paragraph notwithstanding the priority dates of the present perfected rights as listed below. However, nothing in this paragraph (5) shall affect the order in which such rights listed below as "MISCELLANEOUS PRESENT PERFECTED RIGHTS" (numbered 7–21 and 29–80 below) shall be satisfied.  Furthermore, nothing in this paragraph shall be construed to determine the order of satisfying any other Indian water rights claims not herein specified.

I

ARIZONA

A.  Federal Establishments' Present Perfected Rights

The federal establishments named in Art. II, subdivision (D), paragraphs (2), (3), (4), and (5) of this decree, such rights having been decreed in Art. II:

| Defined Area of Land | Annual Diversions (Acre-Feet)[1] | Net Acres[1] | Priority Date |
|---|---|---|---|
| 1)  Cocopah Indian Reservation | 7,681 | 1,206 | Sept. 27, 1917 |
| 2)  Colorado River Indian Reservation | 358,400 | 53,768 | Mar. 3, 1865 |
|  | 252,016 | 37,808 | Nov. 22, 1873 |
|  | 51,986 | 7,799 | Nov. 16, 1874 |
| 3)  Fort Mojave Indian Reservation | 27,969 | 4,327 | Sept. 18, 1890 |
|  | 75,566 | 11,691 | Feb. 2, 1911 |
| 3a)  Fort Yuma Indian Reservation | 6,350 | 952 | Jan. 9, 1884 |

In addition to the mainstream diversion rights in favor of the Indian Reservations specified in Paragraph I(A) of this

---

[1] The quantity of water in each instance is measured by (i) diversions or (ii) consumptive use required for irrigation of the respective acreage and for satisfaction of related uses, whichever of (i) or (ii) is less.

Appendix, a mainstream diversion right of 2,026 acre-feet for the Cocopah Reservation shall be charged against the State of Arizona with a priority date of June 24, 1974.

B. Water Projects' Present Perfected Rights

(4) *The Valley Division, Yuma Project* in annual quantities not to exceed (i) 254,200 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 43,562 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of 1901.

(5) *The Yuma Auxiliary Project, Unit B* in annual quantities not to exceed (i) 6,800 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 1,225 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of July 8, 1905.

(6) *The North Gila Valley Unit, Yuma Mesa Division, Gila Project* in annual quantities not to exceed (i) 24,500 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 4,030 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of July 8, 1905.

C. Miscellaneous Present Perfected Rights

1. The following miscellaneous present perfected rights in Arizona in annual quantities of water not to exceed the listed acre-feet of diversion from the mainstream to supply the consumptive use required for irrigation and the satisfaction of related uses within the boundaries of the land described and with the priority dates listed:

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Priority Date |
|---|---|---|
| 7) | | |
| 160 Acres in Lots 21, 24, and 25, Sec. 29 and Lots 15, 16, 17 and 18, and the SW$^1/_4$ of the SE$^1/_4$, Sec. 30, T.16S., R.22E., San Bernardino Base and Meridian, Yuma County, Arizona. (Powers)[2] | 960 | 1915 |
| 8) | | |
| Lots 11, 12, 13, 19, 20, 22 and S$^1/_4$ of SW$^1/_4$, Sec. 30, T.16S., R.22E., San Bernardino Base and Meridian, Yuma County, Arizona. (United States)[3] | 1,140 | 1915 |
| 9) | | |
| 60 acres within Lot 2, Sec. 15 and Lots 1 and 2, Sec. 22, T.10N., R.19W, G&SRBM. (Graham)[2] | 360 | 1910 |
| 10) | | |
| 180 acres within the N$^1/_2$ of the S$^1/_2$ and the S$^1/_2$ of the N$^1/_2$ of Sec. 13 and the SW$^1/_4$ of the NE$^1/_4$ of Sec. 14, T.18N., R.22W., G&SRBM. (Hulet)[2] | 1,080 | 1902 |
| 11) | | |
| 45 acres within the NE$^1/_4$ of the SW$^1/_4$, the SW$^1/_4$ of the SW$^1/_4$ and the SE$^1/_4$ of the SW$^1/_4$ of Sec. 11, T.18N., R.22W., G&SRBM. 80 acres within the N$^1/_4$ of the SW$^1/_4$ of Sec. 11, T.18N., R.22W., G&SRBM. 10 acres within the NW$^1/_4$ of the NE$^1/_4$ of the NE$^1/_4$ of Sec. 15, T.18N., R.22W., G&SRBM. 40 acres within the SE$^1/_4$ of the SE$^1/_4$ of Sec. 15, T.18N., R.22W., G&SRBM (Hurschler)[2] | 1,050 | 1902 |

---

[2] The names in parentheses following the description of the "Defined Area of Land" are used for identification of present perfected rights only; the name used is the first name appearing as the Claimants identified with a parcel in Arizona's 1967 list submitted to this Court.

[3] Included as a part of the Powers' claim in Arizona's 1967 list submitted to this Court. Subsequently, the United States and Powers agreed to a Stipulation of Settlement on land ownership whereby title to this property was quieted in favor of the United States.

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Priority Date |
|---|---|---|
| 12) | | |
| 40 acres within Sec. 13, T.17N., R.22W., G&SRBM. (Miller)[2] | 240 | 1902 |
| 13) | | |
| 120 acres within Sec. 27, T.18N., R. 22W., G&SRBM. | | |
| 15 acres within the NW$^1$/$_4$ of the NW$^1$/$_4$, Sec. 23, T.18N., R.22W., G&SRBM. (McKellips and Granite Reef Farms)[4] | 810 | 1902 |
| 14) | | |
| 180 acres within the NW$^1$/$_4$ of the NE$^1$/$_4$, the SW$^1$/$_4$ of the NE$^1$/$_4$, the NE$^1$/$_4$ of the SW$^1$/$_4$, the NW$^1$/$_4$ of the SE$^1$/$_4$, the NE$^1$/$_4$ of the SE$^1$/$_4$, and the SW$^1$/$_4$ of the SE$^1$/$_4$, and the SE$^1$/$_4$ of the SE$^1$/$_4$, Sec. 31, T.18N., R.21W., G&SRBM. (Sherrill & Lafolette)[4] | 1,080 | 1902 |
| 15) | | |
| 53.89 acres as follows: | 318 | 1928 |

Beginning at a point 995.1 feet easterly of the NW corner of the NE$^1$/$_4$ of Sec. 10, T.8S., R.22W., Gila and Salt River Base and Meridian; on the northerly boundary of the said NE$^1$/$_4$, which is the true point of beginning, then in a southerly direction to a point on the southerly boundary of the said NE$^1$/$_4$ which is 991.2 feet E. of the SW corner of said NE$^1$/$_4$ thence easterly along the S. line of the NE$^1$/$_4$, a distance of 807.3 feet to a point, thence N. 0º7′ W., 768.8 feet to a point, thence E. 124.0 feet to a point, thence northerly 0º14′ W., 1,067.6 feet to a point, thence E. 130 feet to a point, thence northerly 0º20′ W., 405.2 feet to a point, thence northerly 63º10′ W., 506.0 feet to a point, thence northerly 90º15′ W., 562.9 feet to a point on the northerly boundary of the said NE$^1$/$_4$, thence easterly along the said northerly boundary of the said NE$^1$/$_4$, 116.6 feet to

---

[4] The names in parentheses following the description of the "Defined Area of Land" are the names of claimants, added since the 1967 list, upon whose water use these present perfected rights are predicated.

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Priority Date |
|---|---|---|
| the true point of the beginning containing 53.89 acres.  All as more particularly described and set forth in that survey executed by Thomas A. Yowell, Land Surveyor on June 24, 1969. (Molina)[4] | | |
| 16) | | |
| 60 acres within the $NW\frac{1}{4}$ of the $NW\frac{1}{4}$ and the north half of the $SW\frac{1}{4}$ of the $NW\frac{1}{4}$ of Sec. 14, T.8S., R.22W., G&SRBM. 70 acres within the $S\frac{1}{4}$ of the $SW\frac{1}{4}$ of the $SW\frac{1}{4}$, and the $W\frac{1}{4}$ of the $SW\frac{1}{4}$, Sec. 14, T.8S., R.22W., G&SRBM. (Sturges)[4] | 780 | 1925 |
| 17) | | |
| 120 acres within the $N\frac{1}{4}$ $NE\frac{1}{4}$, $NE\frac{1}{4}$ $NW\frac{1}{4}$, Section 23, T.18N., R.22W., G&SRBM. (Zozaya)[4] | 720 | 1912 |
| 18) | | |
| 40 acres in the $W\frac{1}{4}$ of the $NE\frac{1}{4}$ of Section 30, and 60 acres in the $W\frac{1}{4}$ of the $SE\frac{1}{4}$ of Section 30, and 60 acres in the $E\frac{1}{4}$ of the $NW\frac{1}{4}$ of Section 31, comprising a total of 160 acres all in Township 18 North, Range 21 West of the G&SRBM. (Swan)[4] | 960 | 1902 |
| 19) | | |
| 7 acres in the East 300 feet of the $W\frac{1}{4}$ of Lot 1 (Lot 1 being the $SE\frac{1}{4}$ $SE\frac{1}{4}$, 40 acres more or less), Section 28, Township 16 South, Range 22 East, San Bernardino Meridian, lying North of U. S. Bureau of Reclamation levee right of way.  EXCEPT that portion conveyed to the United States of America by instrument recorded in Docket 417, page 150 EXCEPTING any portion of the East 300 feet of $W\frac{1}{4}$ of Lot 1 within the natural bed of the Colorado River below the line of ordinary high water and also EXCEPTING any artificial accretions waterward of said line of ordinary high water, all of which comprises approximately seven (7) acres. (Milton and Jean Phillips)[4] | 42 | 1900 |

2. The following miscellaneous present perfected rights in Arizona in annual quantities of water not to exceed the

listed number of acre-feet of (i) diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use, whichever of (i) or (ii) is less, for domestic, municipal, and industrial purposes within the boundaries of the land described and with the priority dates listed:

| Defined Area of Land | Annual Diversions (acre-feet) | Annual Consumptive Use (acre-feet) | Priority Date |
|---|---|---|---|
| 20) City of Parker[2] | 630 | 400 | 1905 |
| 21) City of Yuma[2] | 2,333 | 1,478 | 1893 |

## II

## CALIFORNIA

### A. Federal Establishments' Present Perfected Rights

The federal establishments named in Art. II, subdivision (D), paragraphs (1), (3), (4), and (5) of this decree, such rights having been decreed by Art. II:

| Defined Area of Land | Annual Diversions (acre-feet)[5] | Net Acres[5] | Priority Date |
|---|---|---|---|
| 22) Chemehuevi Indian Reservation | 11,340 | 1,900 | Feb. 2, 1907 |
| 23) Fort Yuma Indian Reservation | 71,616 | 10,742 | Jan. 9, 1884 |
| 24) Colorado River Indian Reservation | 10,745 | 1,612 | Nov. 22, 1873 |
| | 40,241 | 6,037 | Nov. 16, 1874 |
| | 5,860 | 879 | May 15, 1876 |
| 25) Fort Mojave Indian Reservation | 16,720 | 2,587 | Sept. 18, 1890 |

---

[5] The quantity of water in each instance is measured by (i) diversions or (ii) consumptive use required for irrigation of the respective acreage and for satisfaction of related uses, whichever of (i) or (ii) is less.

Appendix to Decree

B.  Water Districts' and Projects' Present Perfected Rights

26)

*The Palo Verde Irrigation District* in annual quantities not to exceed (i) 219,780 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 33,604 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of 1877.

27)

*The Imperial Irrigation District* in annual quantities not to exceed (i) 2,600,000 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 424,145 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of 1901.

28)

*The Reservation Division, Yuma Project, California* (non-Indian portion) in annual quantities not to exceed (i) 38,270 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 6,294 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of July 8, 1905.

C.  Miscellaneous Present Perfected Rights

1. The following miscellaneous present perfected rights in California in annual quantities of water not to exceed the listed number of acre-feet of diversions from the mainstream to supply the consumptive use required for irrigation and the satisfaction of related uses within the boundaries of the land described and with the priority dates listed:

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Priority Date |
|---|---|---|
| 29) 130 acres within Lots 1, 2, and 3, SE$^1/_4$ of NE$^1/_4$ of Section 27, T.16S., R.22E., S.B.B. & M. (Wavers)[6] | 780 | 1856 |
| 30) 40 acres within W$^1/_4$, W$^1/_4$ of E$^1/_4$ of Section 1, T.9N., R.22E., S.B.B. & M. (Stephenson)[6] | 240 | 1923 |
| 31) 20 acres within Lots 1 and 2, Sec. 19, T.13S., R.23E., and Lots 2, 3, and 4 of Sec. 24, T.13S., R.22E., S.B.B. & M. (Mendivil)[6] | 120 | 1893 |
| 32) 30 acres within NW$^1/_4$ of SE$^1/_4$, S$^1/_4$ of SE$^1/_4$, Sec. 24, and NW$^1/_4$ of NE$^1/_4$, Sec. 25, all in T.9S., R.21E., S.B.B. & M. (Grannis)[6] | 180 | 1928 |
| 33) 25 acres within Lot 6, Sec. 5; and Lots 1 and 2, SW$^1/_4$ of NE$^1/_4$, and NE$^1/_4$ of SE$^1/_4$ of Sec. 8, and Lots 1 & 2 of Sec. 9, all in T. 13S., R.22E., S.B.B. & M. (Morgan)[6] | 150 | 1913 |
| 34) 18 acres within E$^1/_4$ of NW$^1/_4$ and W$^1/_4$ of NE$^1/_4$ of Sec. 14, T.10S., R.21E., S.B.B. & M. (Milpitas)[6] | 108 | 1918 |
| 35) 10 acres within N$^1/_4$ of NE$^1/_4$, SE$^1/_4$ of NE$^1/_4$, and NE$^1/_4$ of SE$^1/_4$, Sec. 30, T.9N., R.23E., S.B.B. & M. (Simons)[6] | 60 | 1889 |
| 36) 16 acres within E$^1/_4$ of NW$^1/_4$ and N$^1/_4$ of SW$^1/_4$, Sec. 12, T.9N., R.22E., S.B.B. & M. (Colo. R. Sportsmen's League)[6] | 96 | 1921 |

---

[6] The names in parentheses following the description of the "Defined Area of Land" are used for identification of present perfected rights only; the name used is the first name appearing as the claimant identified with a parcel in California's 1967 list submitted to this Court.

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Priority Date |
|---|---|---|
| 37) 11.5 acres within E$\frac{1}{4}$ of NW$\frac{1}{4}$, Sec. 1, T.10S., R.21E., S.B.B. & M. (Milpitas)[6] | 69 | 1914 |
| 38) 11 acres within S$\frac{1}{4}$ of SW$\frac{1}{4}$, Sec. 12, T.9N., R.22E., S.B.B. & M. (Andrade)[6] | 66 | 1921 |
| 39) 6 acres within Lots 2, 3, and 7 and NE$\frac{1}{4}$ of SW$\frac{1}{4}$, Sec. 19, T.9N., R.23E., S.B.B. & M. (Reynolds)[6] | 36 | 1904 |
| 40) 10 acres within N$\frac{1}{4}$ of NE$\frac{1}{4}$, SE$\frac{1}{4}$ of NE$\frac{1}{4}$ and NE$\frac{1}{4}$ of SE$\frac{1}{4}$, Sec. 24, T.9N., R.22E., S.B.B. & M. (Cooper)[6] | 60 | 1905 |
| 41) 20 acres within SW$\frac{1}{4}$ of SW$\frac{1}{4}$ (Lot 8), Sec. 19, T.9N., R.23E., S.B.B. & M. (Chagnon)[7] | 120 | 1925 |
| 42) 20 acres within NE$\frac{1}{4}$ of SW$\frac{1}{4}$, N$\frac{1}{4}$ of SE$\frac{1}{4}$, SE$\frac{1}{4}$ of SE$\frac{1}{4}$, Sec. 14, T.9S., R.21E., S.B.B. & M. (Lawrence)[7] | 120 | 1915 |

2. The following miscellaneous present perfected rights in California in annual quantities of water not to exceed the listed number of acre-feet of (i) diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use, whichever of (i) or (ii) is less, for domestic, municipal, and industrial purposes within the boundaries of the land described and with the priority dates listed:

| Defined Area of Land | Annual Diversions (acre-feet) | Annual Consumptive Use (acre-feet) | Priority Date |
|---|---|---|---|
| 43) City of Needles[6] | 1,500 | 950 | 1885 |

---

[7] The names in parentheses following the description of the "Defined Area of Land" are the names of the homesteaders upon whose water use these present perfected rights, added since the 1967 list submitted to this Court, are predicated.

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Annual Consumptive Use (acre-feet) | Priority Date |
|---|---|---|---|
| 44) Portions of: Secs. 5, 6, 7 & 8, T.7N., R.24E.; Sec. 1, T.7N., R.23E.; Secs. 4, 5, 9, 10, 15, 22, 23, 25, 26, 35, & 36, T.8N., R.23E.; Secs. 19, 29, 30, 32 & 33, T.9N., R.23E., S.B.B. & M. (Atchison, Topeka and Santa Fe Railway Co.)[6] | 1,260 | 273 | 1896 |
| 45) Lots 1, 2, 3, 4, 5, & SW$\frac{1}{4}$ NW$\frac{1}{4}$ of Sec. 5, T.13S., R.22E., S.B.B. & M. (Conger)[7] | 1.0 | 0.6 | 1921 |
| 46) Lots 1, 2, 3, 4 of Sec. 32, T.11S., R.22E., S.B.B. & M. (G. Draper)[7] | 1.0 | 0.6 | 1923 |
| 47) Lots 1, 2, 3, 4, and SE$\frac{1}{4}$ SW$\frac{1}{4}$ of Sec. 20, T.11S., R.22E., S.B.B. & M. (McDonough)[7] | 1.0 | 0.6 | 1919 |
| 48) SW$\frac{1}{4}$ of Sec. 25, T.8S., R.22E., S.B.B. & M. (Faubion)[7] | 1.0 | 0.6 | 1925 |
| 49) W$\frac{1}{4}$ NW$\frac{1}{4}$ of Sec. 12, T.9N., R.22E., S.B.B. & M. (Dudley)[7] | 1.0 | 0.6 | 1922 |
| 50) N$\frac{1}{4}$ SE$\frac{1}{4}$ and Lots 1 and 2 of Sec. 13, T.8S., R.22E., S.B.B. & M. (Douglas)[7] | 1.0 | 0.6 | 1916 |
| 51) N$\frac{1}{4}$ SW$\frac{1}{4}$, NW$\frac{1}{4}$ SE$\frac{1}{4}$, Lots 6 and 7, Sec. 5, T.9S., R.22E., S.B.B. & M. (Beauchamp)[7] | 1.0 | 0.6 | 1924 |
| 52) NE$\frac{1}{4}$ SE$\frac{1}{4}$, SE$\frac{1}{4}$ NE$\frac{1}{4}$, and Lot 1, Sec. 26, T.8S., R.22E., S.B.B. & M. (Clark)[7] | 1.0 | 0.6 | 1916 |

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Annual Consumptive Use (acre-feet) | Priority Date |
|---|---|---|---|
| 53)<br>N$^{1}/_{4}$ SW$^{1}/_{4}$, NW$^{1}/_{4}$ SE$^{1}/_{4}$, SW$^{1}/_{4}$ NE$^{1}/_{4}$, Sec. 13, T.9S., R.21E., S.B.B. & M. (Lawrence)[7] | 1.0 | 0.6 | 1915 |
| 54)<br>N$^{1}/_{4}$ NE$^{1}/_{4}$, E$^{1}/_{4}$ NW$^{1}/_{4}$, Sec. 13, T.9S., R.21E., S.B.B. & M. (J. Graham)[7] | 1.0 | 0.6 | 1914 |
| 55)<br>SE$^{1}/_{4}$, Sec. 1, T.9S., R.21E., S.B.B. & M. (Geiger)[7] | 1.0 | 0.6 | 1910 |
| 56)<br>Fractional W$^{1}/_{4}$ of SW$^{1}/_{4}$ (Lot 6) Sec. 6, T.9S., R.22E., S.B.B. & M. (Schneider)[7] | 1.0 | 0.6 | 1917 |
| 57)<br>Lot 1, Sec. 15; Lots 1 & 2, Sec. 14; Lots 1 & 2, Sec. 23; all in T.13S., R.22E., S.B.B. & M. (Martinez)[7] | 1.0 | 0.6 | 1895 |
| 58)<br>NE$^{1}/_{4}$, Sec. 22, T.9S., R.21E., S.B.B. & M. (Earle)[7] | 1.0 | 0.6 | 1925 |
| 59)<br>NE$^{1}/_{4}$ SE$^{1}/_{4}$, Sec. 22, T.9S., R.21E., S.B.B. & M. (Diehl)[7] | 1.0 | 0.6 | 1928 |
| 60)<br>N$^{1}/_{4}$ NW$^{1}/_{4}$, N$^{1}/_{4}$ NE$^{1}/_{4}$, Sec. 23, T.9S., R.21E., S.B.B. & M. (Reid)[7] | 1.0 | 0.6 | 1912 |
| 61)<br>W$^{1}/_{4}$ SW$^{1}/_{4}$, Sec. 23, T.9S., R.21E., S.B.B. & M. (Graham)[7] | 1.0 | 0.6 | 1916 |
| 62)<br>S$^{1}/_{4}$ NW$^{1}/_{4}$, NE$^{1}/_{4}$ SW$^{1}/_{4}$, SW$^{1}/_{4}$ NE$^{1}/_{4}$, Sec. 23, T.9S., R.21E., S.B.B. & M. (Cate)[7] | 1.0 | 0.6 | 1919 |
| 63)<br>SE$^{1}/_{4}$ NE$^{1}/_{4}$, N$^{1}/_{4}$ SE$^{1}/_{4}$, SE$^{1}/_{4}$ SE$^{1}/_{4}$, Sec. 23, T.9S., R.21E., S.B.B. & M. (McGee)[7] | 1.0 | 0.6 | 1924 |

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Annual Consumptive Use (acre-feet) | Priority Date |
|---|---|---|---|
| 64) SW$\frac{1}{4}$ SE$\frac{1}{4}$, SE$\frac{1}{4}$ SW$\frac{1}{4}$, Sec. 23, NE$\frac{1}{4}$ NW$\frac{1}{4}$, NW$\frac{1}{4}$ NE$\frac{1}{4}$, Sec. 26; all in T.9S., R.21E., S.B.B. & M. (Stallard)[7] | 1.0 | 0.6 | 1924 |
| 65) W$\frac{1}{4}$ SE$\frac{1}{4}$, SE$\frac{1}{4}$ SE$\frac{1}{4}$, Sec. 26, T.9S., R.21E., S.B.B. & M. (Randolph)[7] | 1.0 | 0.6 | 1926 |
| 66) E$\frac{1}{4}$ NE$\frac{1}{4}$, SW$\frac{1}{4}$ NE$\frac{1}{4}$, SE$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 26, T.9S., R21E., S.B.B. & M. (Stallard)[7] | 1.0 | 0.6 | 1928 |
| 67) S$\frac{1}{4}$ SW$\frac{1}{4}$, Sec. 13, N$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 24; all in T.9S., R.21E., S.B.B. & M. (Keefe)[7] | 1.0 | 0.6 | 1926 |
| 68) SE$\frac{1}{4}$ NW$\frac{1}{4}$, SE$\frac{1}{4}$, Lots 2, 3, & 4, Sec. 25, T.13S., R.23E., S.B.B. & M. (C. Ferguson)[7] | 1.0 | 0.6 | 1903 |
| 69) Lots 4 & 7, Sec. 6; Lots 1 & 2, Sec. 7; all in T.14S., R.24E., S.B.B. & M. (W. Ferguson)[7] | 1.0 | 0.6 | 1903 |
| 70) SW$\frac{1}{4}$ SE$\frac{1}{4}$, Lots 2, 3, and 4, Sec. 24, T.12S., R.21E., Lot 2, Sec. 19, T.12S., R.22E., S.B.B. & M. (Vaulin)[7] | 1.0 | 0.6 | 1920 |
| 71) Lots 1, 2, 3 and 4, Sec. 25, T.12S., R21E., S.B.B. & M (Salisbury) | 1.0 | 0.6 | 1920 |
| 72) Lots 2, 3, SE$\frac{1}{4}$ SE$\frac{1}{4}$, Sec. 15, NE$\frac{1}{4}$ NE$\frac{1}{4}$, Sec. 22; all in T.13S., R.22E., S.B.B. & M. (Hadlock)[7] | 1.0 | 0.6 | 1924 |

Appendix to Decree

| Defined Area of Land | Annual Diversions (acre-feet) | Annual Consumptive Use (acre-feet) | Priority Date |
|---|---|---|---|
| 73) SW$\frac{1}{4}$ NE$\frac{1}{4}$, SE$\frac{1}{4}$ NW$\frac{1}{4}$, and Lots 7 & 8, Sec. 6, T.9S., R.22E., S.B.B. & M. (Streeter)[7] | 1.0 | 0.6 | 1903 |
| 74) Lot 4, Sec. 5; Lots 1 & 2, Sec. 7; Lots 1 & 2, Sec. 8; Lot 1, Sec. 18; all in T.12S., R.22E., S.B.B. & M. (J. Draper)[7] | 1.0 | 0.6 | 1903 |
| 75) SW$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 5; SE$\frac{1}{4}$ NE$\frac{1}{4}$ and Lot 9, Sec. 6; all in T.9S., R.22E., S.B.B. & M. (Fitz)[7] | 1.0 | 0.6 | 1912 |
| 76) NW$\frac{1}{4}$ NE$\frac{1}{4}$, Sec. 26; Lots 2 & 3, W$\frac{1}{4}$ SE$\frac{1}{4}$, Sec. 23; all in T.8S., R.22E., S.B.B. & M. (Williams)[7] | 1.0 | 0.6 | 1909 |
| 77) Lots 1, 2, 3, 4, & 5, Sec. 25, T.8S., R.22E., S.B.B. & M (Estrada)[7] | 1.0 | 0.6 | 1928 |
| 78) S$\frac{1}{4}$ NW$\frac{1}{4}$, Lot 1, frac. NE$\frac{1}{4}$ SW$\frac{1}{4}$, Sec. 25, T.9S., R.21E., S.B.B. & M. (Whittle)[7] | 1.0 | 0.6 | 1925 |
| 79) N$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 25; S$\frac{1}{4}$ SW$\frac{1}{4}$, Sec. 24; all in T.9S., R.21E., S.B.B. & M. (Corington)[7] | 1.0 | 0.6 | 1928 |
| 80) S$\frac{1}{4}$ NW$\frac{1}{4}$, N$\frac{1}{4}$ SW$\frac{1}{4}$, Sec. 24, T.9S., R.21E., S.B.B. & M. (Tolliver)[7] | 1.0 | 0.6 | 1928 |

Appendix to Decree

## III
## NEVADA

A. Federal Establishments' Present Perfected Rights

The federal establishments named in Art. II, subdivision (D), paragraphs (5) and (6) of this decree, such rights having been decreed by Art. II:

| Defined Area of Land | Annual Diversions (acre-feet) | Net Acres | Priority Date |
|---|---|---|---|
| 81) Fort Mojave Indian Reservation | 12,534[8] | 1,939[8] | Sept. 18, 1890 |
| 82) Lake Mead National Recreation Area (The Overton Area of Lake Mead N.R.A. provided in Executive Order 5105) | 500 | 300[9] | May 3, 1929[10] |

---

[8] The quantity of water in each instance is measured by (i) diversions or (ii) consumptive use required for irrigation of the respective acreage and for satisfaction of related uses, whichever of (i) or (ii) is less.

[9] Refers to acre-feet of annual consumptive use, not to net acres.

[10] Article II (D)(6) of this decree specifies a priority date of March 3, 1929. Executive Order 5105 is dated May 3, 1929 (see C.F.R. 1964 Cumulative Pocket Supplement, p. 276, and the Findings of Fact and Conclusions of Law of the Special Master's Report in this case, pp. 294–295).